UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SOFIA HERNANDEZ JUAREZ, :
individually and on behalf of others
similarly situated, :

                Plaintiff, :

                -against- :    **REPORT AND RECOMMENDATION**

MANHATTAN LAUNDRY CENTERS :    18-CV-2843 (VSB) (KNF)
INC. (D/B/A MANHATTAN LAUNDRY
CENTER), HERE TO CLEAN, INC :
(D/B/A HERE TO CLEAN INC.),
PRECIOUS 2 NY, INC. (D/B/A :
PRECIOUS 2 NY, INC.), EUNG HO
(A.K.A. CHOY) KIM, KRIS H YUN, :
JOHN DOE (A.K.A. Mr. JIN), AND
ASHIMA (A.K.A. MRS. KIM, A.K.A. :
MR. KIM's WIFE) DOE,

              :
              Defendants.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE

## BACKGROUND

On March 30, 2018, Sofia Hernandez Juarez ("Hernandez") commenced this action against Manhattan Laundry Centers Inc., Here to Clean, Inc. ("HTC"), Precious 2 NY, Inc., Eung Ho Kim ("Kim"), Kris H. Yun, John Doe and Ashima Doe, asserting the following claims: (1) "Violation of the Minimum Wage Provisions of the FLSA [Fair Labor Standards Act]," 29 U.S.C. § 206(a); (2) "Violation of the Overtime Provisions of the FLSA," 29 U.S.C. § 207(a)(1); (3) "Violation of the New York Minimum Wage Act," under New York Labor Law ("NYLL"), Article 19, § 652(1); (4) "Violation of the Overtime Provisions of the [NYLL]," "§ 190 *et seq.* and supporting regulations"; (5) "Violation of the Notice and Recordkeeping Requirements of

1

the [NYLL]," under NYLL, Article 6 § 195(1); (6) "Violation of the Wage Statement Provisions of the [NYLL]," Article 6 § 195(3); and (7) "Violation of the Timely Payment Provisions of the [NYLL]," Article 6 § 191. Your Honor entered a default on the issue of liability against Manhattan Laundry Centers, Inc., HTC, Precious 2 NY, Kim and Kris H. Yun and referred the matter to the undersigned for an inquest on damages.

The Court directed the plaintiff to file: (1) proposed findings of fact and conclusions of law; and (2) an inquest memorandum of law, accompanied by supporting affidavits and exhibits, setting forth proof of her damages. The plaintiff filed: (i) "Proposed Findings of Fact and Conclusions of Law," Docket Entry No. 49; (ii) an "Inquest Memorandum," Docket Entry No. 50; and (iii) an "Inquest Memorandum" with exhibits A through N, Docket Entry No. 51. Kim filed his affidavit, Docket Entry No. 53. On May 8, 2019, the Court conducted an inquest hearing, at which the plaintiff testified, and directed that any post-hearing memoranda may be submitted, on or before May 29, 2019. HTC and Kim submitted timely their post-inquest memorandum of law and their attorney's declaration with exhibits, Docket Entry Nos. 60 and 61.

On May 30, 2019, the plaintiff submitted a letter, contending, inter alia, that "Plaintiff's complaint allegations should be accepted as true and defendants having not answered or appeared at inquest should not be permitted to introduce evidence not already admitted." Docket Entry No. 62. On the same day, HTC and Kim filed a letter, requesting that the Court strike the plaintiff's May 30, 2019 letter as untimely and contending that the "plaintiff made no attempt," as her counsel promised, to "'supplement' or 'fix' her 'prior submissions' due to the many inconsistencies revealed in her inquest testimony"; rather, the plaintiff's attorney "submitted an apparent opposition to ECF 60 and ECF 61, belatedly no less." Docket Entry No. 63. In response to the defendants' request, the plaintiff submitted another letter, dated May 30, 2019,

requesting that the Court "accept our belated post-inquest memorandum" because the plaintiff's attorney was under the "mistaken impression that today was the deadline for these materials" and "we do not believe that the defendants would be prejudiced by this submission as it was not designed as a rebuttal or opposition to their memorandum." Docket Entry No. 64. In a footnote to the plaintiff's May 30, 2019 letter, Docket Entry No. 64, the plaintiff's counsel states that "Plaintiff acknowledges that the matter of supplementation was raised at the inquest but upon review of the facts and caselaw after the hearing the filed memorandum is reflective of Plaintiff's position." Before the Court are the parties' inquest submissions and the record from the inquest hearing.

## PLAINTIFF'S INQUEST SUBMISSIONS

The plaintiff contends, in the "Proposed Findings of Fact and Conclusions of Law," that she: (1) "should be awarded minimum and overtime wages of $49,411.88 and spread of hours wages of $5,427.50" and "equal amounts of liquidated damages," based on "the damages chart submitted herewith"; (2) "did not receive a wage notice or wage statements and is entitled to the $5,000 maximum penalties"; (3) "should be awarded statutory damages of $5,000 for failure to provide wage notices, and $5,000 for failure to provide wage statements. (Ex. J)"; (4) "should be awarded to [sic] $5,892.00 in attorneys' fees and costs," based on "[t]he attorneys' time records and costs . . . attached to the [Michael] Faillace declaration as Exhibit M"; and (5) should be awarded "the total amount of $119,678.75 for unpaid overtime wage damages, spread of hours damages, liquidated damages, and other claims."

"Plaintiff Donato Rosales Medina" contends in the "Inquest Memorandum" that: (i) "[a] true and correct copy of the filed complaint is annexed as Exhibit A"; (ii) "[a] true and correct copy of the Affidavits of Service are annexed to the Faillace Declaration as EXHIBITS B-F";

3

and (iii) "[a] true and correct copy of the Clerk's Certificates of Default are annexed as [sic] to the Faillace Declaration as Exhibits G-K." "Inquest Memorandum" also contains the following assertions: (a) "defendants are liable to Plaintiff for unpaid overtime and spread of hours," without identifying any amounts; (b) "Plaintiff should be awarded liquidated damages of 100% of his back pay"; and (c) "Plaintiff should be awarded attorneys' fees of $5,035.00 and costs of $600.00, totaling $5,635.00."

The plaintiff stated in her declaration that she was employed by the defendants "as a dry cleaner worker," from "approximately November 28, 2011 until on or about March 22, 2018," and she worked regularly in excess of 40 hours weekly: (a) from November 8, 2011, to March 14, 2018, the plaintiff worked approximately from 8:00 a.m. to 6:30 p.m., Mondays and Tuesdays and from 8:00 a.m. to 6:00 p.m. Wednesdays through Fridays; and (b) from March 15, 2018, to March 22, 2018, the plaintiff worked the same weekly hours except that she no longer worked Fridays. According to the plaintiff, from 2012 to March 14, 2018, the defendants paid her "wages in cash." From March 15 to March 22, 2018, the plaintiff was paid wages "in a combination of check and cash." The plaintiff stated that, from November 28, 2011, to December 2012, the defendants paid her "a fixed salary of $280 per week." Thereafter, the defendants paid her "a fixed weekly salary" of $300, during 2013, $320, during 2014, $340, during 2015, $360, during 2016, $380, during 2017, and $400, during 2018, until March 14, 2018. The plaintiff stated that she never received overtime compensation, wage statements or notices concerning minimum wage and overtime requirements.

### DEFENDANTS' INQUEST SUBMISSIONS

Kim stated in his affidavit that six days after the plaintiff commenced this action "a fire completely destroyed" the HTC store, "a drop off dry cleaner" where the plaintiff was employed,

"which closed permanently as a result." The fire destroyed all payroll records, punch cards, logs and other evidence relevant to this action. Kim stated that the March 15, 2018 and the March 23, 2018 checks the defendants gave to the plaintiff contradict the plaintiff's statements in her declaration. According to Kim: (1) the March 15, 2018 cancelled check #2002, in the amount of $244, was for the hours the plaintiff worked "that week"; and (2) the March 23, 2018 cancelled check #2011, in the amount of $300, establishes that the plaintiff worked 37.5 hours from "3/19-3/22 4 days," and "was paid in addition to 'cash $150' for a total remittance of $450.00."

## INQUEST HEARING

At the inquest hearing, the plaintiff testified that she worked in the defendants' "laundry," "[f]olding clothes," from "8 until 6:30," Mondays and Tuesdays, and "from 8 to 6," Wednesdays through Fridays. The plaintiff stated that she was paid $280, in 2011 and 2012, after which she "would get a $20 raise every year. And then in March of 2018, that's when they changed things and started paying me by check. And also a little bit of cash, but on the check it says something which was not what they were telling me." The plaintiff stated that, as of March 2018, she no longer worked five days per week because the defendants "took away one of my days and the check would say $240, but the woman would only give me $156 in cash. I don't know why they did that." The plaintiff testified that she received "two checks, the last ones," namely, one check made out to the plaintiff and dated March 15, 2018, showing the amount $244, and the other check made out to the plaintiff and dated March 23, 2018, showing the amount $300. The plaintiff testified that the two checks indicate different amounts, and the March 23, 2018 check indicates it was for 37.5 hours of work. When asked "[s]houldn't both these checks from consecutive weeks be around the same amount if you were on a fixed salary," the plaintiff responded: "This was the reason why I quit, because this was the change that they made." The

5

plaintiff denied that she: (a) was paid an hourly wage of $12; and (b) signed any receipts for each cash payment weekly. The plaintiff stated that she cashed the March 15, 2018 and the March 23, 2018 checks. The plaintiff stated that she took the week off for Thanksgiving and Christmas, in 2017 and 2018, and the defendants never paid her for her "time off with kids."

## DEFENDANTS' POST-INQUEST SUBMISSIONS

HTC and Kim contend that, despite the plaintiff's allegation that she worked "four hundred twenty (420) consecutive weeks," she conceded at the inquest hearing that "she did not work the entire year every year," and she "admitted receiving varying, non-'fixed' wages (pro-rated at $12.00/Hour) for working less than 40 hours per week." Thus, "there is no way for any court to assess damages with reasonable certainty," since the record contradicts the plaintiff's declaration concerning her compensation, including her allegations of "fixed salary" and overtime hours "regularly" worked through the entire alleged employment period. According to HTC and Kim, the plaintiff's declaration and her testimony "render her damages questionable" and the plaintiff's attorney did not supplement or correct the record to present the accurate information, as he stated he would do at the inquest hearing. Moreover, the plaintiff's fee application is deficient, consisting of Exhibit M, Docket Entry No. 51-13, "a purported 'time sheet' showing fees and costs incurred, with no receipts, along with two short conclusory paragraphs set forth" in the "Inquest Memorandum," Docket Entry No. 51 at p.7. In support of the post-inquest memorandum, HTC's and Kim's attorney submitted his declaration with exhibits, including Exhibit C, a report dated April 17, 2018, "from Superior Fire Investigation detailing the March 24, 2018, 'fire loss at 124 Avenue C, New York, NY 10009,' or plaintiff's alleged place of employment from November 2011 through March 2018," as well as photographs showing the extent of the fire damage to the premises.

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). It is "not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." Fustok v. Conticommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.
>
> 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (4th ed. 2014).

"[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint." Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007). Where the complaint does not include a demand for particular relief, for example prejudgment interest, "the conventional additional demand for 'such other and further relief as the Court deems just and proper' does not constitute a demand for" such relief. Silge, 510 F.3d at 160.

### *FLSA*

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.

29 U.S.C. § 206(a)(1)(C).

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

The "regular rate" of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.' For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." 29 C.F.R. § 778.110(a). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be

liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An action under FLSA must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

## *NYLL*

The minimum hourly wage was as follows: (a) $7.15, effective on January 1, 2007; (b) $8, effective on December 31, 2013; (c) $8.75, effective on December 31, 2014; (d) $9, effective on December 31, 2015, and until December 31, 2016; (e) on December 31, 2016, the minimum hourly wage rate was $11 for an employer of eleven or more employees and $10.50 for an employer of ten or fewer employees; and (f) on December 31, 2017, the minimum hourly wage rate was $13 for an employer of eleven or more employees and $12 for an employer of ten or fewer employees. See NYLL § 652(1). "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended, provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply." 12 New York Compilation of Codes, Rules and Regulations § 142-2.2. NYLL requires every employer to provide an employee a written notice of the rate of pay and the basis thereof, whether paid by the hour or otherwise, any allowances and certain other employment-related information, as well as a statement, "with every payment

of wages, listing" certain employment-related information, including the dates of work covered by that payment of wage and the rate of pay and basis for the rate. NYLL §§ 195(1) and (3). A plaintiff is permitted to recover money damages not exceeding $5,000 for the employer's failure to provide required notices under each of NYLL §§ 195 (1) and (3). See NYLL §§ 198 (1-b) and (1-d). Any employee who is paid less than the wage to which she or he is entitled under NYLL Article 6, and prevails in a court upon a wage claim shall be awarded reasonable attorney's fees and "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198 (1-a). Plaintiffs asserting unpaid wages claims under the FLSA and NYLL are not allowed "duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018). "[A]n action to recover upon a liability imposed by [Article 19 of NYLL] must be commenced within six years." NYLL § 663(3).

### *Attorney's Fees*

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion

of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)). "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id.

> [T]he equation in the caselaw of a "reasonable hourly fee" with the "prevailing market rate" contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district. . . . [T]he fee applicant has the burden of showing by "satisfactory evidence—in addition to the attorney's own affidavits"—that the requested hourly rates are the prevailing market rates.

Id. at 209 (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11).

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF LEGAL STANDARD

The plaintiff's document styled "Proposed Findings of Fact and Conclusions of Law," Docket Entry No. 49, and the documents styled "Inquest Memorandum," Docket Entry Nos. 50 and 51, have almost identical content, except that: (a) the document at Docket Entry No. 49

11

states it is submitted on behalf of the plaintiff, whereas the documents at Docket Entry Nos. 50 and 51 state they are submitted on behalf of "Plaintiff Donato Rosales Medina," a person not a party to this action; and (b) the document at Docket Entry No. 50 contains no exhibits, whereas the document at Docket Entry No. 51 contains Exhibits A through N. Not only do the documents styled "Inquest Memorandum," Docket Entry Nos. 50 and 51, state they were submitted by a non-party "Plaintiff Donato Rosales Medina," they are also dated January 17, 2018, which is a date preceding March 30, 2019, the date on which this action commenced. The plaintiff's "Proposed Findings of Fact and Conclusions of Law," Docket Entry No. 49, is also dated January 17, 2018, a date preceding the commencement of this action. Exhibits attached improperly to the document styled "Inquest Memorandum," Docket Entry No. 51, are not admissible evidence, apart from Exhibit L, which is admissible evidence because it is the plaintiff's declaration made under penalty of perjury.

The plaintiff references, in the Proposed Findings of Fact and Conclusions of Law, the "Faillace" declaration. However, no declaration by the plaintiff's attorney, Faillace, was submitted in support of the plaintiff's request for damages. In the section "Damage Calculations" of the plaintiff's Proposed Findings of Fact and Conclusions of Law, the plaintiff contends: "In the damages chart submitted herewith, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into 'Pay Periods.'" However, no "damages chart" or any other evidence was submitted by the plaintiff in support of her request for damages.

In the Proposed Findings of Fact and Conclusions of Law, the plaintiff seeks "spread of hours wages of $5,427.50" and an "equal amount of liquidated damages." However, the plaintiff did not assert a spread-of-hours claim under NYLL or seek spread-of-hours damages in the

complaint. Therefore, she cannot recover spread-of-hours damages because she did not claim them in the complaint. See Silge, 510 F.3d at 161. Seeking spread-of-hours damages not sought in the complaint has no basis in fact or law and implicates Rule 11(b) of the Federal Rules of Civil Procedure. Similarly, the plaintiff asserts that "the damages chart," which she did not submit, includes "interest." To the extent that the plaintiff seeks interest other than post-judgment interest, she cannot obtain that relief because she failed to seek such interest in the complaint. See Silge, 510 F.3d at 161.

In the section "Wage Notice and Wage Statement Damages" of the Proposed Findings of Fact and Conclusions of Law, the plaintiff contends she "did not receive a wage notice or wage statements and is entitled to the $5,000 maximum penalties," while at the same time contending, in the section "Damage Calculations" of the Proposed Findings of Fact and Conclusions of Law, that she "should be awarded statutory damages of $5,000 for failure to provide a wage notice, and $5,000 for failure to provide wage statements. (Ex. J)." The plaintiff's contentions in the Proposed Findings of Fact and Conclusions of Law, concerning the amount(s) she seeks in connection with wage notice and wage statement damages, are contradictory and not supported by "Ex. J" to which the plaintiff makes citation because Exhibit J, improperly attached to the "Inquest Memorandum" submitted by "Plaintiff Donato Rosales Medina," is asserted in that document to be "the Clerk's Certificate[] of Default."

The plaintiff's testimony at the inquest hearing undermines her declaration statements with respect to the number of hours she worked regularly, as well as the wages she received from the defendants. Although the plaintiff stated in her declaration that she worked regularly in excess of 40 hours weekly and worked typically 51 hours weekly, from November 28, 2011, to March 14, 2018, and 41 hours weekly, from March 15, 2018, to March 22, 2018, at the hearing,

the plaintiff admitted that she took time off from work for certain holidays as well as "time off with kids," for which she stated she was not paid. Moreover, the March 23, 2018 check indicates the plaintiff worked 37.5 hours for the week for which the check was given to her, which she did not contradict or deny. Kim stated in his declaration that the plaintiff received $150 cash in addition to the March 23, 2018 check for $300, making her remittance at $450 for that week, which appears to be consistent with the plaintiff's contention that from March 15-22, 2018, she was paid in a combination of check and cash. Furthermore, when asked "[s]houldn't both these checks from consecutive weeks be around the same amount if you were on a fixed salary," the plaintiff stated "[t]his was the reason why I quit, because this was the change that they made." The plaintiff did not explain the reason she "quit," identify "the change they made" or provide any detail explaining the discrepancy between the two checks she received. The plaintiffs' statements in her declaration, undermined by her testimony at the inquest hearing, and the absence of any evidence supporting the calculations of damages requested by the plaintiff, do not permit the Court to assess with any certainty the amount of damages in this action.

In the section "Cost and Attorneys' Fees" of the Proposed Findings of Fact and Conclusions of Law, the plaintiff asserts that her attorneys Faillace and Shawn Clark ("Clark") worked on this matter, and that "[t]he attorneys' time records and costs are attached to the Faillace declaration as Exhibit M." As mentioned above, no declaration by Faillace was submitted in support of the plaintiff's request for damages. The plaintiff also asserts, in the section "Cost and Attorneys' Fees" of the Proposed Findings of Fact and Conclusions of Law, that she "should be awarded to [sic] $5,892.00 in attorneys' fees and costs." However, in the section "Costs and Attorneys' Fees" of the "Inquest Memorandum" submitted by "Plaintiff Donato Rosales Medina," it is asserted that "[t]he attorneys' time records and costs are attached

14

to the Faillace declaration as Exhibit M," and "[b]ased on those records, Plaintiff should be awarded attorneys' fees of $5,035.00 and costs of $600.00 totaling $5,635.00." Although no declaration by Faillace was submitted in support of the plaintiff's request for damages, Exhibit M, attached improperly to the "Inquest Memorandum," appears to be a document bearing the letterhead Michael Faillace & Associates, P.C., dated August 7, 2018, referencing this action and containing columns entitled "Date," "Description," "Hours," "Amount," "Lawyer," "Disbursements," "Total Fee & Disbursements," and "Balance Now Due." Exhibit M attached improperly to the "Inquest Memorandum" appears to indicate that: (1) an attorney with initials "MF," presumably Faillace, expended 8 hours of work on this case at an hourly rate of $450; (2) an attorney with initials "SC," presumably Clark, expended four hours of work on this case at an hourly rate of $375; (3) 12 hours in total were expended by the plaintiff's attorneys on this matter for the total fee amount of "$5,100.00"; (4) the amount for disbursements is "$792"; and (5) fees and disbursements total "$5,892.00." Assuming that Exhibit M improperly attached to the "Inquest Memorandum" is what the plaintiff asserts it to be in the Proposed Findings of Fact and Conclusions of Law, namely, "[t]he attorneys' time records and costs," the amounts requested for the attorneys' fees in the "Inquest Memorandum," "$5,035.00 and costs of $600.00 totaling $5,635.00," contradict the amounts appearing in Exhibit M attached to that document, namely $5,100.00 for attorneys' fees and $792 for disbursements, as well as the total amount of "$5,892.00" requested in the Proposed Findings of Fact and Conclusions of Law. No explanation is provided for these discrepancies anywhere in the plaintiff's submissions. More importantly, no declaration by the plaintiff's counsel was submitted in support of any contentions concerning attorneys' fees and costs.

15

The plaintiff's counsel acknowledged, in the May 30, 2019 letter, "that the matter of supplementation was raised at the inquest," but stated that "upon review of the facts and caselaw after the hearing the filed memorandum is reflective of Plaintiff's position." The plaintiff's counsel had an opportunity to correct the glaring mistakes and inconsistencies in the plaintiff's inquest submissions, including to ascertain that the Faillace declaration with exhibits, one of which is presumably "the damages chart submitted herewith," was never filed in this action, but determined, "upon review of the facts and caselaw after the hearing" that "the filed memorandum is reflective of Plaintiff's position." The inconsistencies in the record and the absence of evidence supporting the attorneys' fees and costs do not permit the Court to assess the amount of attorneys' fees and costs with reasonable certainty.

## RECOMMENDATION

For the foregoing reasons, I recommend that no damages be awarded to the plaintiff.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, 40 Centre Street, Room 415, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      October 29, 2019

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE